**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **OTHA MICHAEL WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1664** |
| **ASSOCIATION DE PREVOYANCE**<br>**INTERENTREPRISES d/b/a PREVINTER,**<br>**SAICI SAINT HONORE d/b/a MOBILITY**<br>**BENEFITS & PRIDE INTERNATIONAL, INC.**<br>**LONG TERM DISABILITY PLAN** | **SECTION: "G"(2)** |

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant SIACI Saint Honore's ("SIACI") Motion to Dismiss for Lack of Jurisdiction.[1] Having considered the motion, the response, the reply, the surreply, the record, and the applicable law, for the following reasons, the Court will deny Defendant SAICI's Motion to Dismiss.

**I. Background**

*A. Procedural Background*

Plaintiff Otha Michael Williams ("Plaintiff") filed his Complaint in this matter on July 18, 2011,[2] seeking to recover from SAICI, Association de Prevoyance Interentreprises ("Previnter"),[3] and Pride International, Inc. Long Term Disability Plan ("the Plan") (collectively, "Defendants") for long-term disability benefits that Plaintiff claims are governed by the Employer Retirement Income

---

[1] Rec. Doc. 18.

[2] Rec. Doc. 1.

[3] A preliminary default judgment was ordered against Previnter on January 31, 2012. *See* Rec. Doc. 23.

Security Act[4] ("ERISA"). Specifically, this action was brought under ERISA's civil enforcement provision.[5] Plaintiff amended his complaint on September 15, 2011, seeking to bring a class action pursuant to Federal Rule of Civil Procedure 23.[6]  The proposed class action is brought on behalf of all participants or beneficiaries of the Plan, which was provided by Pride International, Inc. ("Pride") as employer and which was administered by SAICI, who received an adverse benefits determination and were forced into arbitration or were forced to pay any fees associated with their appeals.[7] Plaintiff filed his Motion to Certify Class on March 12, 2012,[8] but it has not yet been set for hearing before this Court.  In Plaintiff's proposed class action, he seeks injunctive and/or declaratory relief to enjoin Defendants from enforcing the arbitration terms of the Plan against other claimants and himself.[9] As a component of this cause of action, Plaintiff claims that Defendants' failure to establish and maintain reasonable claims procedures, primarily by forcing binding arbitration in France, was a cause of the class's injuries.[10]

Defendant SAICI filed a Motion to Dismiss for Lack of Jurisdiction on December 21, 2011,[11] and Plaintiff filed his Opposition to the Motion to Dismiss on February 7, 2012.[12] Following leave

---

[4] 29 U.S.C. § 1001, *et. seq.*

[5] *See* 29 U.S.C. § 1132.

[6] Rec. Doc. 4.

[7] Rec. Doc. 4 at ¶ 17.

[8] Rec. Doc. 32.

[9] *Id.*

[10] *Id.* at ¶ 1.

[11] Rec. Doc. 18.

[12] Rec. Doc. 25.

of Court, on March 19, 2012, SAICI filed a reply memorandum to Plaintiff's motion opposing dismissal.[13] After also obtaining leave of Court, Plaintiff filed a surreply on March 22, 2012.[14]

### B. Factual Background

Plaintiff was a full-time employee of Pride and a participant in its health insurance plan.[15] Pride is "one of the world's largest offshore drilling conglomerates" and "maintained and directed its entire Gulf of Mexico operations out of its office located in Houma, Louisiana."[16]   Plaintiff was one of "hundreds of employees who reside[d] and work[ed] in [Pride's] Louisiana offices and business establishments."[17] Pride contracted with Previnter, a French company, to provide insurance coverage to its employees.[18] Previnter, in turn, contracted with another French company, SAICI, to administer the Plan.[19] In this lawsuit, Plaintiff alleges that Defendants improperly terminated his long-term benefits and subjected him to an unreasonable and unlawful appeal process.[20] Plaintiff claims that in September 2006 he sustained serious injuries to his lumbar and cervical spine while in the scope of his employment.[21] Plaintiff further claims that he has endured continuing pain since

---

[13] Rec Doc. 39.

[14] Rec Doc. 43.

[15] Rec. Doc. 4 at ¶ 7.

[16] Rec. Doc. 25 at p. 2.

[17] *Id.*

[18] Rec. Doc. 18-1 at p. 2.

[19] *Id.*

[20] Rec. Doc. 4 at ¶¶ 9-13.

[21] *Id.* at ¶ 3.

the injury, despite "multiple interventional surgeries, therapies, medications and ongoing medical treatment."[22] Allegedly due to this chronic pain, he has not returned to work, and he attests that physicians have declared him permanently disabled.[23]

At issue here, the Plan "provides long term disability insurance coverage and benefits to eligible and qualified employees of Pride International, Inc. and its subsidiaries and affiliated entities."[24] Plaintiff claims that Previnter is a fiduciary of the Plan because it has "sole discretionary authority or responsibility in the administration of insurance benefits provided under the Plan."[25] Plaintiff initially received disability benefits from SAICI as administrator of the plan, and he claims that Defendants unreasonably terminated these payments.[26] When Plaintiff attempted to have his long-term benefits reinstated, SAICI informed him that any appeal based on an adverse benefits determination must be submitted for binding arbitration in France, with Plaintiff providing one-half of the arbitration costs, plus the travel expenses of the testifying doctors.[27]

SAICI, a French corporation domiciled in Paris and with no office in the United States, moves for the case against it to be dismissed under Federal Rule of Civil Procedure 12(b), claiming that this Court lacks personal jurisdiction over SAICI.[28] SAICI is a foreign insurance broker who became involved in this matter through its dealings with Previnter, a foreign insurer with its principal

---

[22] *Id.*

[23] *Id.*

[24] *Id.* at ¶ 3.

[25] *Id.* at ¶ 4.

[26] *Id.* at ¶ 10.

[27] *Id.* at ¶ 11.

[28] Rec. Doc. 18-1 at p. 2.

place of business in Paris, France.[29] SAICI claims that all dealings and negotiations regarding the disputed contract were conducted in France and that the contract itself stipulated that it would be governed by French law[30]; thus, SAICI alleges that ERISA is inapplicable.[31] SAICI further claims that it has not availed itself of the benefits and protections of the state of Louisiana, and that it does not have minimum contacts with Louisiana to establish this Court's personal jurisdiction over SAICI.[32] Alternatively, SAICI argues that the contract contains a binding arbitration clause that requires arbitration in France.[33] Plaintiff opposes this motion and maintains that SAICI has sufficient minimum contacts with Louisiana to establish this Court's personal jurisdiction over SAICI; furthermore, Plaintiff argues that binding arbitration should not be compelled here because doing so would expressly violate the laws and regulations that govern ERISA plans.[34]

## II. Law and Analysis

### A. Personal Jurisdiction

In SAICI's Motion to Dismiss,[35] it alleges that this Court lacks personal jurisdiction over it as a French Corporation. For a federal court to exercise personal jurisdiction over a non-resident defendant, (1) there must be a long-arm statute of the state that authorizes the exercise of

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at p. 4.

[32] *Id.* at p. 6.

[33] *Id.* at pp. 6-8.

[34] Rec. Doc. 25 at p. 15.

[35] Rec. Doc. 18.

jurisdiction; and (2) such an exercise of jurisdiction must comport with federal constitutional guarantees of Due Process.[36] Louisiana's long-arm statute is drafted very broadly, allowing for jurisdiction to extend as far as is permissible under the federal constitution.[37] Therefore, "[b]ecause Louisiana's long-arm statute extends jurisdiction to the full limits of due process, a federal court sitting in Louisiana need only determine whether the exercise of its jurisdiction satisfies the requirements of constitutional due process."[38]

To determine if the requirements of constitutional due process are satisfied, the Supreme Court has articulated a two part analysis wherein the plaintiff carries the burden to show: (1) that the defendant has purposefully availed himself of benefits and protections of the forum state by establishing minimum contacts; and (2) that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.[39] In making this determination, a court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve all factual conflicts in the plaintiff's favor.[40]

---

[36] *Rittenhouse v. Mabry*, 832 F.2d 1380, 1383-84 (5th Cir. 1987).

[37] La. Rev. Stat. Ann. § 13:3201(B) ("In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.").

[38] *Home Decor of Elmwood Oaks, LLC v. Jiyou Arts & Frames Co.*, No. 08-762, 2009 WL 273193, at *5 (E.D. La. Jan. 23, 2009) (Vance, C.J.).

[39] *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *see also Thompson v. Chrysler Motor Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (stating that if a nonresident defendant challenges personal jurisdiction, the burden is on the plaintiff to make a prima facie case that personal jurisdiction exists).

[40] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

*1. Minimum Contacts*

Generally, unilateral actions of the plaintiff or a third party are insufficient to establish minimum contacts over a defendant.[41] The Fifth Circuit has held that the exchange of communications in the course of carrying out a contract is alone not enough to constitute the required availment of the benefits and protections of Louisiana law.[42] Likewise, merely contracting with a resident or entity in the forum state will be insufficient to establish minimum contacts.[43] Nonetheless, the Fifth Circuit has held that when a court contemplates whether minimum contacts exist, it should consider prior negotiations and anticipated future occurrences that would result from the contract.[44]

Within the ERISA context, the inquiry into minimum contacts is one of nationwide service, such that if a defendant has minimum contacts with the *United States*, suit may be filed "in a district court of the United States," and "it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."[45]  "[P]rocess may be served in any other district court where a defendant resides or may be found."[46] Here, because all alleged contacts are with Louisiana, the nationwide inquiry that governs ERISA cases collapses into purely an inquiry of whether minimum contacts with Louisiana exist.

SAICI denies the existence of minimum contacts between itself and Louisiana and rejects

---

[41] *Hydrokinetics, Inc. v. Alaska Mechanics, Inc.*, 700 F.2d 1026 (5th Cir. 1983).

[42] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Hydrokinetics*, 700 F.2d at 1028.

[43] *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009).

[44] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

[45] *Id.*

[46] *Id.*

the contention that it has availed itself of Louisiana's laws and protections.[47] It claims that Plaintiff's argument that it has established minimum contacts by administering the Plan is one that has been rejected by the Seventh Circuit in *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*[48]  *Reimer*, however, is distinguishable.  In *Reimer*, the Seventh Circuit affirmed the district court's dismissal of an action against foreign companies who together owned all the stock of a domestic corporation that administered an ERISA Plan.[49]  However, the court's finding that jurisdiction was lacking was based upon the court's determination that corporate affiliation cannot serve as a basis for personal jurisdiction.[50] Here, in contrast, the Court is presented with a question as to whether personal jurisdiction exists over a foreign corporation that is directly administering an ERISA plan, rather than foreign companies once-removed from direct plan administration. Even though they each had partial ownership, the *Reimer* defendants did not have direct control over the subsidiary plan administrator; here, SAICI is itself the administrator.

Furthermore, district courts within the Fifth Circuit have found personal jurisdiction to exist over administrators of health insurance plans.  In *Sanders v. State Street Bank and Trust Company*, the District Court for the Southern District of Texas found personal jurisdiction to exist over a plan administrator whose principal place of business was located outside of the state.[51] There, the court found that the defendant-administrator's actions of sending statements to savings plan participants

---

[47] *See* Rec. Doc. 39.

[48] 230 F.3d 934, 945-46 (7th Cir. 2000).

[49] *Id.*

[50] *Id.* at 945.  Specifically, the court found that the corporations involved maintained separate financial records, the corporations did not exercise control over the subsidiary, and the company was not a mere "alter ego[]" of one of the administrators.  *Id.*

[51] 813 F. Supp. 529 (S.D. Tex. 1993).

8

in the state, mailing checks and promissory notes to state residents, and providing a toll-free number were sufficient to establish minimum contacts with the state of Texas.[52] The court went further, claiming that the administrator "possessed sufficient minimum contacts with this state simply by virtue of being plan administrator," and found that jurisdiction was appropriate because actions taken to administer the plan had a "real and important effect in Texas."[53] Similarly, in a case decided in the Eastern District of Louisiana, the court found personal jurisdiction to exist over a Chinese manufacturing company because it purposely directed in-state and out-of-state activities at the forum with the "aim of establishing a long-term association" with a resident of the forum state and, therefore, it reasonably should have expected to litigate in Louisiana.[54] The court found the Chinese company's anticipated future business relationship to be a significant factor in establishing sufficient minimum contacts.[55]

Here, SAICI continually administered a plan that covered workers in Louisiana pursuant to a plan maintained by a company, Pride, that directed its operations out of Louisiana. Through its administration of the Plan, SAICI repeatedly had contact with Louisiana residents who made claims pursuant to their insurance coverage. Therefore, in this case, SAICI did not merely exchange communications with persons in Louisiana; instead, it solicited business with an expectation of a long-term relationship with Louisiana residents, involving interactions and dealings, through the payment of benefits, with Louisiana residents over a prolonged period of time. Here, there was

---

[52] *Id.* at 532.

[53] *Id.*

[54] *Home Decor,* 2009 WL 273193, at *5.

[55] *Id.*

purposeful activity in the jurisdiction, including a calculated effort to engage or solicit business or to extract profits from the jurisdiction in question.

Considering these factors, this Court finds that SAICI has sufficient minimum contacts with Louisiana through its actions as plan administrator. SAICI chose to serve as administrator of the Plan, which covered "hundreds" of Louisiana employees[56] and which was provided by Pride, allegedly a United States corporation[57]; thus, SAICI reasonably could have anticipated that the administration of the Plan would require long-term business contacts with Louisiana residents. Contrary to SAICI's contentions, it has not "merely contracted" with a resident of the forum state, but instead it has continued to administer the resident company's health insurance plan. Furthermore, SAICI performed a litany of activities that should suffice to establish minimum contacts in this case, including but not limited to: paying regular disability benefits for Plaintiff into a Louisiana bank account, corresponding with Plaintiff's healthcare providers in Louisiana, paying local doctors, and corresponding with Pride regarding Plaintiff's treatment.[58] These actions demonstrate continual contact with Louisiana persons and entities and evidence SAICI's expectation of a continued business relationship within Louisiana.

*2. Fair Play and Substantial Justice*

Upon a finding of minimum contacts, a court will exercise jurisdiction unless there are

---

[56] Rec. Doc. 25 at p. 2.

[57] Rec. Doc. 25 at pp. 15-16.

[58] *See id.* at pp. 16-17.

legitimate concerns regarding fair play and substantial justice that would require it to do otherwise.[59] "[O]nce a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair."[60] A defendant only overcomes this burden by making a "compelling case" against the exercise of personal jurisdiction.[61] Furthermore, the Fifth Circuit has determined that if minimum contacts are established, it will be rare that a court determines that the exercise of jurisdiction would be unfair, since the interests of the forum state in resolving the matter may justify even large burdens on the non-resident defendant.[62]

The Fifth Circuit has articulated the criteria a district court should consider in determining whether it would be unfair to exercise personal jurisdiction even where minimum contacts have been established; these are: (1) the burden on the defendant having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the court's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies.[63]

Having determined that minimum contacts have been established here, it would take an exceptional showing by SAICI to establish that fair play concerns nonetheless compel this Court to find personal jurisdiction lacking. Such a showing has not been made; in fact, SAICI has advanced no arguments that fair play concerns require this Court not to exercise jurisdiction, instead only

---

[59] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

[60] *Id.*

[61] *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[62] *McFadin*, 587 F.3d at 759-60.

[63] *Id.* (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006)).

arguing that SAICI does not have the required minimum contacts to support personal jurisdiction. Nonetheless, the Court notes that a substantial burden on SAICI is unlikely here because SAICI already regularly conducts business in Louisiana through the administration of the health plan. Additionally, Louisiana has a strong interest in safeguarding the interests of its residents and workers, and forcing Plaintiff to arbitrate in France would undoubtably be a substantial burden on him, whereas litigation in the Eastern District of Louisiana will provide convenient and effective relief. Because SAICI has not met its burden to make an exceptional showing that this Court should not exercise jurisdiction where the Court has already found minimum contacts to exist, the Court finds that it has personal jurisdiction over SAICI.   Having so found, this Court must next consider SAICI's alternative argument that Plaintiff's claim should be dismissed because of the binding arbitration clause allegedly contained in the Plan's contract.

### B. Binding Arbitration Claim

Defendant SAICI also seeks dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(3)[64] for improper venue based upon the Federal Arbitration Act ("FAA"), which enacted into law The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").[65]   Defendant argues that venue is improper here because the Plan contract stipulates (1) that if the parties' doctors disagree as to the severity of the injury, the dispute must be arbitrated in Paris and (2) that if the parties cannot agree on a neutral doctor to preside over the

---

[64] Rec. Doc. 18-1 at p. 6. Defendant notes that the Fifth Circuit has yet to decide whether Rule 12(b)(1) is the appropriate vehicle for this motion and notes that it preserves its right to make this argument later. *Id.* at n. 10 (citing *Omet Primary Aluminum Corp. v. M/V Fu An Cheng*, 681 F. Supp.2d 737 (E.D. La. 2009) (Feldman, J.)).

[65] June 10, 1958, 21 U.S.T. 2517, enacted as law under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*

arbitration, then the Paris District Court may hear the dispute.[66]  Defendant argues that this Court should enforce the arbitration clause in the contract because the Convention provides this Court with jurisdiction and venue to enforce such agreements[67] and because, according to Defendant, there exists a strong federal policy in favor of enforcing arbitration clauses, as evidenced by the Congressional enactment of the FAA.[68]

In *Lim v. Offshore Specialty Fabricators, Inc.*, the Fifth Circuit set forth four factors that, when satisfied, will result in application of the Convention under the FAA.[69]  The factors that must be satisfied for the Convention to apply are: (1) there must be an agreement in writing to arbitrate such disputes; (2) the agreement must provide for arbitration in the territory of a Convention signatory; (3) the agreement must arise out of a commercial legal relationship; and (4) there must be a party to the agreement who is not a U.S. citizen.[70] Neither party disputes that these criteria are met and that the Convention could apply.

However, instead, Plaintiff argues that SAICI violated ERISA in attempting to enforce unreasonable claims procedures by requiring binding arbitration in France, such that the arbitration clause in question is unenforceable.[71] Specifically, Plaintiff cites 29 U.S.C. § 1132(a), which gives plaintiffs the right to file a civil action for such disputes.[72] Plaintiff argues that the Convention does

---

[66] Rec. Doc. 18-1 at Exhibit A, art. 18.

[67] Rec. Doc. 18-1 at p. 7.

[68] *Id.* at p. 8.

[69] 404 F.3d 898, 903 (5th Cir. 2005).

[70] *Id.*

[71] Rec. Doc. 25 at p. 12.

[72] *Id.*

not require this Court to compel mandatory arbitration here, despite a general presumption in favor of arbitration and even though the *Lim* factors are met, because the arbitration clause is unenforceable under the regulations that govern ERISA.[73]

Under ERISA, the Secretary of Labor is authorized to create regulations that further the goals of the statute's provisions.[74] In this capacity, the Secretary requires plans to establish and maintain reasonable claim procedures for appeals from adverse benefit determinations.[75] Specifically, a claim procedure that requires the claimant to pay fees or costs as part of an appeal for an adverse benefits determination is considered unreasonable.[76] The regulations state:

> Group health plans. The claims procedures of a group health plan will be deemed to be reasonable only if, in addition to complying with the requirements of paragraph (b) of this section – [t]he claims procedures do not contain any provision for the mandatory arbitration of adverse benefit determinations.[77]

Plaintiff argues that the mandatory arbitration clause violates this regulation because it does just that.[78] It not only requires binding arbitration in France or adjudication in Paris District Court, but also it mandates Plaintiff pay half of the costs and fees, including travel expenses for testifying

---

[73] *Id.* Further, Plaintiff distinguishes the instant case from *Lim* in that *Lim* involved an employment contract, rather than an ERISA claim. Accordingly, in *Lim*, there was no argument that ERISA regulations mandated an outcome different from that which would otherwise obtain under the Convention.

[74] 29 U.S.C. § 1135.

[75] 29 C.F.R. § 2560.503-1(b).

[76] *Id.* §§ 2560.503-1(c)(3)(v), 2560.503-1(d).

[77] *Id.* This provision does allow for an exception to the ban on arbitration. A ban on arbitration is enforced unless the arbitration is conducted as one of the two appeals described in paragraph (c)(2) in accordance with the requirements applicable to such appeals and the claimant is not precluded from challenging the decision under section 502(a) of the Act or other applicable law. *Id.* at §§ 2560.503-1(c)(4)(1)-(2). However, this exception does not appear applicable here and neither party has claimed otherwise.

[78] Rec. Doc. 4 at p. 6.

14

doctors.[79]

Thus, although federal law typically favors the enforcement of arbitration agreements, federal regulations prohibit binding arbitration regarding challenges to adverse ERISA benefit determinations. Forcing a plaintiff to travel to France and to initiate arbitration at his expense would be unreasonable under the Secretary of Labor's standards and, therefore, the arbitration clause at issue here is unenforceable if this Plan implicates ERISA.

Here, SAICI presents three arguments as to why this Court should find ERISA inapplicable, such that this Court should enforce the arbitration clause contained within the Plan. First, SAICI argues that the Plan falls outside the parameters of ERISA. Second, SAICI points to the choice of law provision contained within the Plan and argues that the Plan falls under French law, such that the Plan is not governed by ERISA. Last, SAICI argues that even if the Plan would otherwise fall under ERISA, ERISA does not preempt foreign law, such that it should not be applied here.

### 1. ERISA Requirements

Three conditions must be met for ERISA to attach to a plan: (1) the plan must exist; (2) the plan must fall outside the Department of Labor safe harbor provisions; and (3) the plan must satisfy the primary elements of an ERISA "employee benefit plan."[80] The Fifth Circuit has clearly established that ERISA's applicability is dictated by the fulfilment of these three criteria and not by whether the parties intended ERISA to apply.[81] There is no question here that a plan exists, nor that

---

[79] Rec. Doc. 18-1 at Exhibit A, art. 18.

[80] 29 U.S.C. § 1002(1)-(3); *see also Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).

[81] *Meredith*, 980 F.2d at 354.

the primary elements of an ERISA employee benefits plan have been met.  An ERISA plan exists where, as here, the employer intends to provide its employees' welfare through a maintained group insurance policy[82] such that an employer "established or maintained the plan" and the employer "intended to provide benefits to its employees."[83]  Here, Pride contracted with and initiated the Plan and it clearly intended to provide benefits to its employees, even providing benefits to Plaintiff for a period of time.  Thus, there exists only a question of whether the Plan is excepted from the ambit of ERISA under the safe harbor provisions.

For a health insurance plan to be excepted from ERISA under the Department of Labor's safe harbor provisions, four conditions must be met: (1) the employer does not contribute to the plan; (2) participation in the plan is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan.[84]  Exemption from ERISA under the safe harbor provisions requires *all four* of these criteria to be met.[85]  Here, Pride contributed to the Plan through the purchase of group insurance coverage, and employee participation was mandatory.[86]  Thus, the Plan cannot be excepted from ERISA under the safe harbor provisions.

SAICI argues that the Plan is nonetheless "unequivocally" excepted from the ambit of ERISA

---

[82] *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 (5th Cir. 1990).

[83] *Meredith*, 980 F.2d at 355-56.

[84] 29 C.F.R. § 2510.3-1(j).

[85] *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007) ("The plan must meet all four criteria to be exempt from ERISA.").

[86] Rec. Doc. 25 at p. 8.

under 29 U.S.C. § 1003(b)(3).[87]   That section states, "The provisions of this subchapter shall not apply to any employee benefit plan if – such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws."[88] SAICI argues that the Plan is only an individual plan providing long-term disability insurance and that it is not a portion of a comprehensive multi-benefit plan.[89]   SAICI alleges that it only provides the legally required benefits and that under Supreme Court precedent the Plan is excepted from ERISA under 1003(b)(3).[90]

In *Shaw v. Delta Air Lines, Inc.*, the Supreme Court held that an employer's motive is immaterial and that a court will consider only whether the plan provides *only* those benefits that are required in determining if the plan is excepted from ERISA.[91] Here, SAICI argues that Pride is an international corporation which operates throughout many states and countries, some of which have compulsory or mandatory disability insurance requirements.[92] In listing the states that have such mandatory regimes, Louisiana is notably absent.[93] SAICI highlights that many employees, including Plaintiff, must travel often for work and that therefore the Plan was Pride's attempt "to comply with all required laws wherever its employees traveled to or was [sic] assigned to work."[94]   However, this

---

[87] Rec. Doc. 39 at p. 3.

[88] 29 U.S.C. § 1003(b)(3).

[89] Rec. Doc. 39 at p. 4.

[90] *Id.* (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 107 (1983)).

[91] 463 U.S. at 107.

[92] Rec. Doc. 39 at p. 4.

[93] *Id.* at n. 1.

[94] *Id.* at pp. 4-5.

argument relies on the intent or motive of the Plan, rather than what benefits the Plan provides and what the jurisdiction in question requires regarding disability insurance. While in some states the Plan might only cover the minimum required disability insurance, in other states, including Louisiana, the Plan might be in excess of what is required under state law.   SAICI has not demonstrated that it provides no more than the bare minimum of coverage in Louisiana. Furthermore, under the Plan, coverage depends on a European disability scale, making it far-fetched that the Plan provides only the services required under the law of a particular state, here Louisiana.[95] Therefore, SAICI has not presented evidence that coverage under the Plan is not in excess of state law.   Accordingly, the Court finds that this exception does not apply.   The other criteria for ERISA applicability having been met, the Court determines that the Plan falls under ERISA.

### 2.  Choice of Law

SAICI not only contests the applicability of ERISA to this plan, but also it attempts to avoid ERISA's regulations altogether by relying on its alleged choice-of-law provision, which states that the Plan is to be governed by French law and the French Insurance Code.[96]   SAICI argues that this dispute is not governed by ERISA because French law controls; however, this argument is not strongly supported by the law of this or other circuits in the United States.

The Fifth Circuit has entertained choice-of-law provisions applying *state law* as long as the supplementing state law is not preempted by ERISA.[97]   However, the Fifth Circuit has expressly

---

[95] *Id.* at p. 3.

[96] Rec. Doc. 18-1 at pp. 8-11.

[97] *Arana v. Ochsner Health Plan*, 338 F.3d 433, 438 (5th Cir. 2003) (en banc).

18

refused to endorse the principle that parties may stipulate that state law will completely govern an

ERISA claim, as it would drastically undercut congressional intent to balance various interests:

> [T]he detailed provisions of § 502(a) [29 U.S.C. § 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.[98]

Likewise, allowing a plan that originally would have been under the purview of ERISA to be

governed by French law would undermine Congress's policy decisions as reflected in ERISA's civil

enforcement scheme.

Both the Eleventh and Ninth Circuits have upheld choice-of-law provisions in the ERISA

context, as long as they are not unreasonable or fundamentally unfair.[99]  For instance, in *Buce v.*

*Allianz Life Insurance Company*, the Eleventh Circuit upheld the validity of a choice-of-law

provision that applied Georgia law, finding that application of Georgia law to Georgia residents was

not unreasonable.[100]  However, as in the Fifth Circuit,[101] if the chosen law is inconsistent with the

language or policy of ERISA, these circuits will not give effect to the choice-of-law provision.[102]

It should also be noted that where these circuits have contemplated or allowed choice-of-law

---

[98] *In the Matter of HECI Exploration Co.*, 862 F.2d 513, 521 (5th Cir. 1988) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52-53 (1987)).

[99] *Buce v. Allianz Life Ins Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001); *Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993).

[100] 247 F.3d at 1149.

[101] *Arana*, 338 F.3d at 438.

[102] 247 F.3d at n.6 (citing cases from the Seventh and Eighth Circuits also containing language dismissive of choice-of-law provisions that contravene aspects of ERISA).

provisions in the ERISA context, it has been to apply a state's law, not the law of a foreign nation.[103]

Here, the alleged choice-of-law provision is unenforceable on two fronts. First and importantly, applying French law would be inconsistent with the language and policy of ERISA, undercutting Congress's intent to make certain remedies available and to foreclose others. Second, SAICI seeks application of French law to a claim brought by a Louisiana resident, a very different situation from that in *Buce* where the choice-of-law provision would apply the law of the state where the employees resided; here, Plaintiff is a Louisiana resident and the application of French law to his claim would be arbitrary and overly burdensome. Accordingly, this Court finds that the choice-of-law provision is inconsistent with the language and policy of ERISA, that it is not enforceable here, and that it will not remove this matter from the ambient of ERISA.

### 3. Extraterritorial Application and Preemption

Last, SAICI argues that ERISA only preempts state law, not necessarily foreign law, such that it cannot control the Plan here.[104]  In a case cited by SAICI, *Comrie v. IPSCO, Inc.*, the Northern District of Illinois interpreted Congress's lack of action to explicitly make ERISA apply extraterritorially, despite "ample time," as evidence that it only intended it to apply domestically.[105] SAICI argues that ERISA is "primarily concerned with domestic relations"[106] and, as such, that it does not preempt foreign law, meaning that inconsistency with ERISA's policies will not serve as

---

[103] *Id.*

[104] Rec. Doc. 18-1 at pp. 8-11 (citing *Comrie v. IPSCO Inc.*, No. 08-3060, 2008 WL 5220301 (N.D. Ill. Dec. 10, 2008) (finding that the statutory language of ERISA did not clearly preempt foreign law, only state law)).

[105] 2008 WL 5220301, at *5.

[106] Rec. Doc. 18-1 at p. 9 (citing *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)).

the basis for this Court to find the arbitration provision unenforceable.

To support this position, SAICI relies heavily on *EEOC v. Arabian American Oil Company* ("*Aramaco*"), which confronted the issue of whether Title VII of the Civil Rights Act of 1964 applied extraterritorially to U.S. employers who employed U.S. citizens abroad.[107]   There, the Supreme Court held that because Congress did not explicitly voice an intent for Title VII to apply abroad, the plaintiff was unable to overcome a presumption against extraterritorial application.[108] However, *Aramaco* involved an injury that occurred abroad in Saudi Arabia, while in the present case the injury occurred domestically, in Louisiana.   Thus, Plaintiff urges application of U.S. federal law, ERISA, to govern claims based on an accident that occurred within the United States.   This is a very different situation from *Aramaco*, as here there is simply no question of whether ERISA will be applied extraterritorially.   Thus, even assuming that French law would otherwise control, SAICI's arguments regarding why this Court should find that ERISA does not preempt foreign law miss their mark.[109]   SAICI has presented no argument other than the presumption against extraterritorial application as to why ERISA would not preempt foreign law.   Extraterritorial application not being at issue here, SAICI's preemption argument thus fails.

Accordingly, this Court holds that the Plan is governed by ERISA and, therefore, that the arbitration provision is unenforceable under ERISA's regulations that ban mandatory arbitration regarding adverse benefits determinations.

---

[107] 499 U.S. at 246.

[108] *Id.* at 248-55.

[109] Indeed, when the *Comrie* case cited by SAICI was appealed to the Seventh Circuit, the court found ERISA applicable and stated, "This nation applies its domestic employment-relations law to employment within the United States and foreign law to employment abroad."   *Comrie*, 636 F.3d 839, 844 (7th Cir. 2011).

21

### III. Conclusion

Having found that Defendant SAICI has established minimum contacts with the state of Louisiana through deliberate actions toward the state and anticipation of a long-term business relationship, and having found that litigating this matter in the Eastern District of Louisiana will not violate traditional notions of fair play, the Court finds that personal jurisdiction exists over SAICI. In addition, while both federal and state law have articulated policies that provide strong presumptions of enforceability over arbitration agreements, having found that the Plan is governed by ERISA, the Court will not enforce the arbitration agreement alleged in the present case, as it would be unduly burdensome to Plaintiff and contrary to the protections and policies of ERISA, which expressly forbid binding arbitration as a means to contest adverse benefit determinations. Therefore, the Court finds that personal jurisdiction exists here and that this Court can hear this case. Accordingly,

**IT IS HEREBY ORDERED** that SAICI's Motion to Dismiss for Lack of Jurisdiction[110] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 16th day of May, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[110] Rec. Doc. 18.

22